**BENEFICIAL FINANCE CO. v. MAXWELL, et ux.**

No. 66-3-606.

Small Claims Court, St. Lucie County.

June 7, 1966.

WILLIAM G. TYE, Judge.

This cause came on regularly to be heard before this court, without the intervention of a jury, and the court has had the benefit of testimony and a practical demonstration of the subject matter of this suit.

The defendants, Thomas W. Maxwell and Norma Jean Maxwell, husband and wife, purchased a vacuum cleaner from Fairfax S-1 of Eastern Florida, through the company's sales representative, after a home demonstration. A contract was signed by the defendants and the salesman, a franchised distributor. This contract was later assigned to Beneficial Finance Company, the plaintiff in this suit.

It would appear that this salesman was most proficient in his art. His sales approach was based upon a memorized sales pitch conceived by the parent corporation. Techniques in selling have changed greatly in the past decade. The simple barter system of our forefathers is archaic and obsolete.

Today the purchaser is stimulated to spend his money by some very attractive, even glamorous, clichés. For example, "Look, Ma, no cavities", conveys to a busy mother the thought that no

longer will she have to oversee her child's daily toothbrushing so zealously. One brushing with "Duzit" takes care of the situation. Then there is the one, "I thought I saw a dove fly in Mrs. Jones' kitchen". Doesn't it bring to mind a picture of a long, peaceful day, free from household cares? There are also all those "whiter by far" advertisements, which almost guarantee a housewife a high position in the community by reason of the "whitest wash in town." There is also the allure of beauty — "Use our soap and have a skin like velvet". And that mildly suggestive — "Are you ready for a new experience?" Truly, modern salesmanship is founded, in part, upon impulse.

The final proof of a salesman's artistry is, of course, the signed contract. In the instant case the contract was well drafted; it contained no language that could be construed as obscure, misleading, false, or ambiguous, therefore, this contract is not open to interpretation by this court. Certainly the defendants were not forced to sign, but, having been sufficiently impressed with the worth of this valuable adjunct to their home, they signed freely. Sober reflection followed culminating in legal action before this court.

Ordinary every-day experience and logical reasoning should have warned the defendants that the salesman was "puffing" his product. The defendants were told by this zealous salesman that there was hardly anything around the house that this modern machine could not do, and, in fact, in a demonstration before this court, the cleaning system functioned normally. The hairdryer attachment would probably have dried hair in record time, if the attachment could have been allowed to remain at high speed and high heat for the prescribed period of time, but, this court did not indulge in this type of self-punishment.

As reasonably intelligent people, the court feels that the defendants should have realized that the air-conditioning feature of the machine (wherein ice is placed in the base of the machine and a volume of air passed over and around the ice) bears much the same relationship to a scientifically-engineered air conditioner as does the Model A Ford of yesteryear to a 1966 Mustang.

The machine, as such, does function. It is unfortunate that the operation of this machine does not come up to the expectation of the purchasers. The conditions complained of by the defendants are not sufficient cause for rescinding or cancelling the contract because their inadequacy is not so gross as to afford proof of actual fraud.

It is accordingly ordered that the plaintiff do have and recover of and from the defendants the sum of $313.92, together with costs in this behalf expended and herein taxed at $8.35.